1 CIT/ESERVE

Case 3:18-cv-03414-G   Document 1-4   Filed 12/28/18   Page 1 of 13   PageID 12

FILED
DALLAS COUNTY
11/29/2018 11:25 AM
FELICIA PITRE
DISTRICT CLERK

Alicia Mata

CAUSE NO. DC-18-17896

| | | |
|---|---|---|
| **LABRESHA KING,** | § | |
| | § | |
| *Plaintiff*, | § | **IN THE DISTRICT COURT** |
| | § | |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **DOLLAR GENERAL CORP.,** | § | |
| | § | |
| *Defendant.* | § | **L-193RD JUDICIAL DISTRICT** |
| | § | |
| | § | |

### PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, LaBresha King, complaining of Dollar General Corp., and for cause of action would show the Court as follows:

### I.

### DISCOVERY CONTROL PLAN

1. In accordance with Rule 190.1, Texas Rules of Civil Procedure, Plaintiff will conduct discovery in this civil action under Discovery Control Plan Level Two.

### II.

### PARTIES

2. Plaintiff LaBresha King ("King" or "Plaintiff") is an individual who resides in Dallas, Dallas County, Texas.

3. Defendant Dollar General Corporation ("Dollar General") is a corporation organized under Kentucky law with its principal office located in Tennessee.

4. Dollar General may be served with process <u>by serving its registered agent</u> for service of process, <u>Corporation Service Company</u> d/b/a CSC-Lawyers Incorporating Service Company, <u>211 E. 7th Street, Suite 620, Austin, Texas 78701</u>.

### III.

### JURISDICTION

5. This court has personal jurisdiction over Defendant because this cause of action arose in Texas, and because Defendant is amenable to service by a Texas court.

6. This Court has subject matter jurisdiction over this dispute because district courts are constitutional courts of general jurisdiction, and the amount in controversy is within the jurisdictional limits of the court.

7. Plaintiff seeks monetary relief of over $200,000 but not more than $1,000,000.

### IV.

### VENUE

8. Venue is proper in Dallas County, Texas pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) because all or a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Dallas County.

### V.

### FACTS

9. Plaintiff began her five-year career with Dollar General as a Sales Associate, and eventually worked her way up to Store Manager. Plaintiff managed the Dollar General store located at 4807 Sunnyvale in southwest Dallas from November of 2016 until she was terminated.

10. Like many of Dollar General's stores, the Sunnyvale store is located in a high crime area. In fact, this store has been plagued with crime literally from the moment it opened, getting robbed on its first day in business. In the two years since the Sunnyvale location opened, it has been broken into at least ten times and its employees robbed at gunpoint <u>four times</u>. The police have been called to the store literally hundreds of times. Plaintiff was present on each of the four armed robberies.

11. During her time as Manager of the Sunnyvale store, Plaintiff reported to various District Managers, including Yava Gibson ("Gibson"), Ali (l.n.u.), Cali (l.n.u.), and Jeffrey Graden ("Graden").

12. Graden became Plaintiff's District Manager in early 2018 and remained her District Manager until he fired her. The Sunnyvale store fell under the supervision of Regional Director Luis (l.n.u.).

13. Plaintiff and other store employees are often required to arrive at the store two hours before the store opens and remain at the store between 30 minutes and an hour after the store closes to perform functions like restocking and cash-handling.

14. Even though the store is located in an extremely dangerous area of town, it lacked basic features designed to ensure the safety of Dollar General's employees and customers. The exterior of the store is poorly lit; the only light sources on the front of the building consist of some fluorescent strip lighting above the door, and the yellow "Dollar General" sign above the awning of the door emits very little light and the light it does project is blocked by the awning. There are exterior lights spaced sporadically along one side of the building, but no lights on the back of the building or along the other side. While there are large street lamps in the parking lot, these were operated by sensor and were never illuminated. At

night, all light sources are scheduled to go off shortly after the store closes to the public. Store employees have to manually override these lights, which would provide illumination in one-hour increments, so that employees could complete their end-of-day job duties. Consequently, when store employees arrive two hours before opening in the morning as they are required to do, there are no lights on at all, and the store and parking lot are pitch black. Although the store erected signs representing that Iverify (a security system that includes closed circuit TV systems and remote monitoring) was installed at the store, it never actually was. The store also did not have panic buttons installed at the cash registers, and it did not even post a 30.06 sign which would have prohibited firearms on the property.

15. In late October of 2017, the store was robbed while clerk Gabrielle Monique Simmons ("Simmons") was working. This robbery left Simmons shaken but she returned to work out of financial need.

16. Two weeks later, on the evening of November 6, 2017, Plaintiff and Simmons were working when the store was again robbed at gunpoint. This time, the perpetrator shot and killed Simmons, a mother of six, as she emptied the till into his bag. This occurred in front of Plaintiff, and Simmons, a coworker and a friend, died in her arms.

17. Following Simmons' murder, Plaintiff requested a transfer to a safer store, but her request was denied. Faced with departing employees and a legitimate fear for employee safety, she begged Gibson, Graden, Cali, Luis, Luis' supervisor, a Dollar General Vice President, a loss prevention employee named Lee (l.n.u.), and risk management employee LaTasha Crosby ("Crosby") for additional safety measures at the store, including additional lighting on the exterior of the building, video cameras on the exterior of the building, an earlier closing time, aluminum rolling doors, a reconfiguration of the layout of the cash registers

to provide a better view of the front door, and armed security.[1] The only changes Dollar General implemented were to allow the store to temporarily close one hour earlier outside of daylight savings time, and private security. The private security that Dollar General arranged was sporadic and was present only from noon to closing because, according to Graden, "criminals sleep during the day." Dollar General discontinued private security altogether on January 1 and reverted to normal operating hours in March.

18. Meanwhile, Plaintiff began seeing a therapist and a psychiatrist after Simmons' murder and was diagnosed with anxiety and post-traumatic stress disorder for the first time in her life. To say that witnessing Simmons' murder affected Plaintiff would be an understatement, and there were times that she doubted that she would ever feel normal again. Through a regimen of medication and regular therapy, Plaintiff was able to continue working.

19. Even though Plaintiff and her employees were abandoned by Dollar General and left to fend for themselves, they adapted to the constant threat of violent crime by alternating their arrival times, circling the building before going inside, checking hiding places like the dumpster, entering the store with their cars still running and headlights on in case they needed to escape, and of course being in a constant state of hypervigilance while working. Even though Plaintiff was not scheduled to work evenings, she would often go to the store in the evenings to be an additional presence for her employees.

20. In the early morning hours of March 18, Plaintiff and store clerk Shawaana Smith ("Smith") arrived at the store around 6:00 AM to stock before the store opened for the day. The lights on the building were not on, and it was completely dark outside. Plaintiff and

---

[1] Businesses and even apartment complexes in the immediate vicinity of the store recognize the danger of the area and utilize off-duty Dallas police officers for security.

**PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND – PAGE 5**

Smith circled the building, checked the dumpster, and parked in front with the car still running. They checked around them and approached the door. Despite these measures, before they could open the door, they heard a male voice behind them shout "b*ch get in the motherf*ing building." The three of them went inside and the assailant closed the door behind them. He was holding Smith by the neck, pointing his gun at Plaintiff, and shouting at her, "b*ch you better not set the alarm" and "give me the money in the safe." They went to the safe by the register and Plaintiff input the code. The safe, though, was on a nine-minute delay, and the assailant became agitated and struck Plaintiff on the side of the head with his gun, shouting "b*ch hurry up" and additional threats. At one point he shoved items that were on the counter onto the floor and screamed at Smith to get in the corner of the room and close her eyes. Plaintiff was sobbing and begging the man to not hurt Smith. He struck her again and swung his gun toward Smith when he saw her praying in the corner. At that point the safe opened, the robber took the contents, and he fled.

21. After the robbery, Plaintiff called Graden but got no answer. She then called Yava and told her what had happened. Graden finally called Plaintiff back around 11:00 and then came to the store. Plaintiff tried to explain what she and Smith had gone through and Graden could not have cared less. He had a backpack full of cash for the till, and he simply told Plaintiff to reopen the store which had been closed all morning as police processed the crime scene.

22. Plaintiff returned to work the next day but experienced a panic attack shortly after her return. She immediately began a medical leave of absence pursuant to the FMLA. Obviously, the anxiety and PTSD she began experiencing when Simmons was killed were significantly aggravated after this robbery. Plaintiff's doctors ordered her to remain off

work as she required more intense therapy and medication as a result of this totally preventable armed robbery.

23. In early June of 2018, Plaintiff's therapist called her and informed her that she had received an email from Dollar General letting her know that she should not provide further services to Plaintiff because her employment with Dollar General had been terminated. This was a shock to Plaintiff, as she had not exhausted her FMLA leave and had done nothing to warrant her termination. She tried to get answers from Crosby, who claimed to not have knowledge of Plaintiff's termination. Plaintiff finally reached Graden, who confirmed that Plaintiff was no longer employed by Dollar General but gave no reason for the termination.

24. Dollar General is a non-subscriber under to the Texas Workers-Compensation Act.

25. Plaintiff has incurred substantial medical expenses as a result of her injuries which were not paid for by Dollar General. Plaintiff's physical injuries include mental and emotional anguish which will continue into the future.

## VI.

## CAUSES OF ACTION

### Count 1 - Negligence

26. Plaintiff incorporates paragraphs 9-25 as though fully set forth herein.

27. Under Texas law, an employer owes its employees nondelegable duties, which include:

   A.   to supervise employees' activities;

   B.   to hire competent co-employees;

   C.   to furnish reasonably safe instrumentalities with which to work;

   D.   to provide rules and regulations for the safety of employees;

   E.   to warn them of the hazards of their position;

    F.    to provide a reasonably safe workplace;

    G.    to provide safety equipment; and

    H.    to train employees to avoid the hazards of their position.

28. Defendant, through its agents, servants, and/or employees, breached these duties by:

    A. refusing to transfer her to a safer location upon her request;

    B. failing to install adequate exterior lighting;

    C. utilizing a time delay safe;

    D. failing to provide cameras; and

    E. refusing to provide adequate armed security.

29. Defendant's breach of these duties proximately caused the damages identified below.

30. Courts consider several factors in determining if an instrumentality is necessary:

    A. whether the employee requested the instrumentality in question;

    B. whether the employee complained that the task she was performing was unsafe;

    C. whether the employee had safely performed the task in the past without injury;

    D. whether the instrumentality "was commonly used in, or had been established by industry standards or customs as a safety measure for" her job;

    E. whether "a reasonably prudent employer would have provided such instrumentality"; and

    F. whether there was medical evidence that the instrumentality would have prevented the employee's injury.

31. Here, Dollar General fails all six factors as

    A. Plaintiff requested additional lighting and security;

    B. Plaintiff complained about the safety issues at the Sunnyvale location;

    C. The previous criminal incidents, including Simmons' murder, provided clear notice to Dollar General of the necessity of better lighting and security;

    D. the benefit of increased lighting and security are well known throughout the industry to prevent criminal activity;

    E. a reasonably prudent employer would have provided increased lighting and security; and

    F. Plaintiff's anxiety and PTSD were directly caused by the armed robberies.

### Count 2 – Gross Negligence

32. Plaintiff incorporates paragraphs 9-25 as though fully set forth herein.

33. Dollar General's conduct was so egregious as to go beyond ordinary negligence principles subjecting them to liability for gross negligence. Tex. Civ. Prac & Rem Code. § 41.003(a)

34. Gross negligence consists of both an objective and a subjective component. The two elements of gross negligence are: 1) when viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and 2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

35. Dollar General's conscious decision to discontinue security and not install the requested lights even after Simmons' murder and in the face of the significant history of criminal activity at the store more than meets the elements of gross negligence. The fact that a defendant exercises some degree of care, does not insulate the defendant from gross negligence liability.

## Count 3 – Premise Liability

36. Plaintiff incorporates paragraphs 9-25 as though fully set forth herein.

37. A premise owner has a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee.

38. Recently, the Texas Supreme Court has applied this premise to nonsubscriber cases. Finding an exception to the general rule that an employer has no duty to warn an employee of unreasonably dangerous conditions that are obvious or known to the employee. *Austin v. Kroger Texas, LP.,* 465 S.W. 3d 193 (Tex.2015), *citing, Del Lago Partners v. Smith*, 307 S.W.3d 762, 772–73 (Tex.2010). This exception applies in cases involving dangers resulting from a third party's criminal conduct in which the landowner should have anticipated that the harm would occur despite the invitee's knowledge of the risks. In such cases, the landowner owes a duty to take reasonable steps to make the premises safe. *See Eagle Trucking Co. v. Tex. Bitulithic Co.*, 612 S.W.2d 503, 507 (Tex. 1981).

39. Dollar General should have anticipated that additional armed robberies and assaults would occur given the previous criminal incidents and Dollar General's decision to remove security from the store.

## Count 4 – Family and Medical Leave Act – Interference

40. Plaintiff incorporates paragraphs 9-25 as though fully set forth herein.

41. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et. seq*.

42. Dollar General is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

43. During the time that Plaintiff was employed by Dollar General, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

44. While Plaintiff was employed by Dollar General, she had a "serious health condition" within the meaning of 29 U.S.C. § 2611(11).

45. Plaintiff was entitled to medical leave to receive treatment for her serious health conditions as provided for in 29 U.S.C. § 2612(a)(1)(C).

46. Dollar General interfered with Plaintiff's rights under the FMLA by terminating her employment shortly into her FMLA leave.

### Count 5 – Family and Medical Leave Act – Retaliation

47. Plaintiff incorporates paragraphs 9-25 as though fully set forth herein.

48. The FMLA also prohibits retaliation for availing oneself of her rights under the FMLA.

49. Plaintiff must show that she was protected under the FMLA, she suffered an adverse employment action, and that a causal link exists between the protected activity and the adverse action.

50. In this case, as set forth above, Plaintiff was protected under the FMLA. Dollar General terminated Plaintiff's employment shortly after she availed herself of her rights under the Act.

## VII.

## **PRAYER**

51. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer herein, and that on trial of this cause of action, Plaintiff shall have judgment against Defendant for the following relief:

   1. Back pay and employment benefits, and other appropriate equitable relief;

   2. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses;

   3. Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

   4. Physical pain and suffering in the past and in the future;

   5. Prejudgment interest on all equitable monetary remedies and compensatory damages;

   6. Punitive damages;

   7. Liquidated damages;

   8. Reasonable attorney's fees and costs, including expert fees; and

   9. Such other and further relief to which Plaintiff may be entitled.

## VIII.

## **JURY DEMAND**

52. Plaintiff requests that all ultimate fact issues be submitted to a jury for determination in accordance with Texas law.  She has paid the jury fee.

Respectfully Submitted,

_____
Kyla Gail Cole
State Bar No. 24033113
kyla@colereicheklaw.com

Cole | Reichek, PLLC
2911 Turtle Creek Boulevard, Suite 300
Dallas, Texas 75219
214.599.8311 (Telephone)
214.580.9680 (Facsimile)

**Counsel for Plaintiff**